UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

MAURICE GATTISON,

        Plaintiff,

v.

THE TOWNSHIP OF IRVINGTON, et. al.,

        Defendants

Civil Action No. 05-1759 (KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff Maurice Gattison ("Gattison"), a police officer for the Township of Irvington, has sued the Township of Irvington, the Irvington Police Department, Police Chief Michael Chase ("Chase"), Sergeant Sharon Noel ("Noel"), Sergeant Amanda Koontz ("Koontz"), and Director Michael Damiano ("Damiano") (collectively "defendants"), alleging they unlawfully retaliated against him for filing a report detailing possible police misconduct to his superiors. Chase, Noel, Koontz, and Damiano move separately for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II.    BACKGROUND

The following background information is drawn from several sources. Gattison's testimony is drawn from both his June 8, 2006 deposition and his April 4, 2007 affidavit that was submitted with this motion. The Court also reviewed internal police department memoranda, Gattison's reports to supervisors, and the opinion and appeal from Gattison's March 2004 disciplinary hearing, which are attached as exhibits to the affidavit of Louis W. Childress, attorney for Damiano, and Chase's brief in support of his motion for summary judgment.

1

Gattison is a decorated officer who has served with the Irvington Police Department since 1995. (Gattison Dep. 11:9-11:11, June 8, 2006.) The incidents at issue here began in August 2003 when he was assigned to the Anti-Crime Partnership, where Noel was his direct supervisor. (Gattison Aff. 6.) On or about August 14, 2003 Gattison claims he "witnessed Officer Noel ordering Officer Wilson to change his report to include evidence against a defendant which was not seized at the time of the arrest and was found twenty (20) minutes later after call of an anonymous tipster not in proximity of the arrest." (Compl. ¶ 18; see Childress Aff., Ex I.) In an unrelated incident occurring two days later, he was assigned to be the "eye" in a drug surveillance operation and observed two individuals engaged in a drug transaction. (Gattison Aff. 10.) Officers arrested both suspects. (Gattison Dep. 20:16-21.) Chase also arrested a third individual, Lawrence Bennett ("Bennett"), whom Gattison did not observe at any time during the surveillance operation. (Gattison Aff. 11.) Gattison prepared a detailed report about the operation in which he stated that he indentified only one white male buyer and one black male seller. (Gattison Aff. 12.) No other individuals were included in his report.

Gattison claims he received a phone call from Noel on August 17, 2003 stating that she had changed his report to provide Chase with probable cause to arrest Bennett. (Gattison Aff. 14; Gattison Dep. 57:22-58:17.) Gattison said he refused to consent to the changes in his report, but Noel made them anyway. (Gattison Aff. 16.) He refused to sign the altered report. (Gattison Aff. Ex. 3.) He alleges he confronted Noel and said he was reporting her changes to his report. (Gattison Aff. 18.) On August 21, 2003 Gattison wrote to Internal Affairs Captain Scott Hildebrand ("Hildebrand") alleging that (1) Noel had altered his report; (2) Chase had arrested Bennett without probable cause; and (3) Noel had pressured Officer Wilson to alter his report concerning the August 14, 2003 operation. (Childress Aff., Ex. I.) Gattison used a Police Department report sheet for his communication to Internal Affairs, and he signed his name as "Ptl. Maurice Gattison, #283." (Id.) Hildebrand referred the matter to the Essex County Prosecutor's Office. (Childress Aff., Ex. J.) The

2

Professional Standards Bureau of the prosecutor's office reviewed Gattison's allegations and concluded they were "unfounded." (Chase Br., Ex. 6.) Internal Affairs reached the same conclusion in its investigation. (Childress Aff., Ex. K.)

Gattison alleges Noel began retaliating against him immediately after he filed his report with Internal Affairs. (Gattison Aff. 19.) On August 21, 2003 she issued him a counseling form for failing to back up his fellow officers during the August 16 operation. (Childress Aff., Ex. D.) According to Noel, when she issued him the form, he "proceeded into a tirade of complaints and profanity, flailing his arms about in a complete and utter display of anger," using expletives like "This is bullshit, f--- that." (Childress Aff., Ex. F at 3.) Hildebrand and Lieutenant John Ferrara witnessed the incident. (Childress Aff., Ex. F at 3; Childress Aff., Ex. E.) Koontz, who worked in Internal Affairs, filed formal charges of insubordination against him. (Gattison Aff. 24.) Gattison claims that Koontz was a personal friend of Noel and that she filed the charges to retaliate against him for reporting Noel. (Gattison Dep. 134:23-135:1.)

A hearing was held on February 24 and March 15, 2004 on the insubordination charges. Gattison was represented by counsel, testified at the hearing, and had an opportunity to make a full evidentiary record. (Childress Aff., Ex. F at 1, 3-4.) The hearing officer found that he had engaged in conduct unbecoming a public employee and sanctioned him with a suspension of five days. (Childress Aff., Ex. F at 6-7.) After de novo review by a state court judge, pursuant to Romanowski v. Twp. Of Brick, 185 N.J. Super. 197, 203-04 (Law Div. 1982) (holding the trial court may conduct a de novo hearing to review a matter where a disciplinary suspension is for five days or less), Gattison's suspension was upheld. (Chase Br., Ex. 4.) Chase later reduced the five day suspension to five vacation days. (Childress Aff., Ex. H.)

Gattison also claims that he was subpoenaed to testify about his report from the August 16, 2003 incident during the municipal court trial for one of the defendants, which he refused to do. (Gattison Aff. 24; Chase Br. 6, 10.) In his brief, Chase claims that while he ordered an investigation

3

into Gattison's refusal to testify, no disciplinary charges were filed against him.  (Chase Br. 6.)

Gattison claims he suffered other retaliatory actions, including transfers from the narcotics unit to the Warrant squad and finally to foot patrol.  (Gattison Aff. 27.)  He claims he was unreasonably refused time off.  (Id.)  Gattison also claims he was "subjected on a daily basis to a hostile work environment, physical and mental stress in the workplace, verbal abuse, discriminatory actions and scorn by senior officers and defendants Chase and Damiano."  (Gattison Aff. 30.)

It appears from the record that Gattison continues to be employed as a police officer in the Irvington Police Department.

Gattison filed suit in federal court in April 2005, asserting three federal causes of action and several state law claims.  In Count 1 of his complaint, Gattison alleges retaliation based on his exercising his First Amendment rights.  (Compl. ¶¶ 35-36.)  In Counts 2 and 3, he alleges defendants violated his due process and equal protections rights under the Fourteenth Amendment.  (Compl. ¶¶ 37-46.)  Gattison also filed state law claims against all defendants which include statutory claims pursuant to New Jersey's Law Against Discrimination ("NJ LAD") and the Conscientious Employee Protection Act ("CEPA").  He also alleges common law civil conspiracy and negligent hiring and supervision claims.

### III.     STANDARD

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of showing the absence of a genuine issue of material fact, regardless of which party has the burden of persuasion at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The court must construe all facts and inferences in the light most favorable to the non-moving party.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d. Cir. 1998).  The non-moving party may not rely on unsupported assertions or conclusory allegations.  Williams

4

v. West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.   DISCUSSION

Section 1983 imposes civil liability upon any person who acts "under the color of state law" and deprives another person of "any rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983. Generally, a plaintiff bringing a Section 1983 action must show (1) "a person deprived him of a federal right"; and (2) "the person who deprived him of that right acted under color of state or territorial law." Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Gattison is raising First and Fourteenth Amendment rights, and it is not disputed that Chase, Noel, Koontz, and Damiano were acting in their official capacities as police officers.

**A.  First Amendment Claim**

In order to establish a First Amendment retaliation claim under Section 1983, a plaintiff has the burden to show (1) that "the activity in question is protected by the First Amendment"; and (2) "that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). "The first factor is a question of law; the second factor is a question of fact." Id.

In Garcetti v. Ceballos, 126 S. Ct. 1951, 1957 (2006), the Supreme Court set forth a stringent analysis for determining when a public employee may file a constitutional claim. Under Garcetti, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens," id. at 1960, and therefore are not shielded from employer discipline based on the First Amendment. On that basis, the Supreme Court concluded there was no First Amendment protection attached to a memo written by Ceballos, a calendar deputy in the Los Angeles District Attorney's Office, in which he expressed concerns about what he characterized as major misrepresentations in an affidavit prepared as part of a search warrant application. Id. at 1959. Ceballos conceded that writing such a memo was part of his official duties and that he could be

subjected to discipline by his employer for the contents of the memo. Id. at 1961. The Court reasoned that just as private employers need to control their employees' words and actions, the government also has a need to control employee communications in order to ensure efficient provision of services to the public. Id. at 1958. Consistent with principles of federalism and separation of powers, the holding of Garcetti keeps the courts out of what are essentially employment disputes. See id. at 1961.

Garcetti offered some guidance for determining when a public employee is speaking pursuant to employment duties. A government employer cannot restrict an employee's speech "by creating excessively broad job descriptions." Id. at 1961. Just because a task is listed in a formal job description is "neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 1962. The court should examine "the content, form, and context of the statement" to determine where the employee was speaking as a citizen. Hill, 455 F.3d at 243 (quoting Rankin v. McPherson, 483 U.S. 378, 384 (1987)).

In this case, Gattison argues that he spoke on "matters of public concern regarding the conduct of the [Irvington Police Department]." (Gattison Opp. Br. 19.) The record reveals that he used a department report sheet to report alleged police corruption and misconduct, and he signed it using his official rank and badge number. (Childress Aff., Ex. I.) The report discussed corruption within his department in general. (Id.) He was particularly concerned about the accuracy of his police report on the August 16, 2003 operation and his supervisor's conduct. (Id.) In his deposition, Gattison conceded that if a police officer sees unethical or illegal conduct, the officer has a duty to report that individual.[1] (Gattison Dep. 175:16-175:24.) The record evidence indicates

---

[1]   Q: I'm not an expert in police procedures, but I would assume if you see actions on the part of your co workers that are unethical or illegal, you're supposed to write them up as soon as possible. Correct?
    A: For the most part, yeah, for the most part.

that Gattison was acting squarely within his employment duties in communicating the alleged misconduct of his fellow officers to appropriate police personnel.

In opposing the argument he was acting within his employment duties, Gattison argues that he does not have a "duty" to falsify police reports or cover up wrongful arrests. (Gattison Opp. Br. 22.) But the duty in play here is to the duty to <u>report misconduct</u>, a duty Gattison concedes is part of his responsibilities as a police officer. (Gattison Dep. 175:16- 175:24.) There is nothing in the record to indicate that Gattison was acting in any other capacity than as a police officer when he made any of his reports, and no evidence that he was acting as a private citizen. To the contrary: in using an official report sheet to communicate, Gattison wasn't communicating the way an ordinary citizen would (or could). He was writing a report to superiors as an employee, an activity that does not qualify for the same constitution-based scrutiny as the speech of a citizen. <u>Id.</u> And if writing his report was an act of an employee of the Police Department, Gattison necessarily subjected himself to discipline by his superiors

The parties discuss post-<u>Garcetti</u> decisions from district and circuit courts in their briefs, which in the main support a conclusion that <u>Garcetti</u> bars Gattison's federal claims. Relying on a procedural basis, Gattison argues that whether or not his report was part of his duties as a police officer is "an issue of material fact to be decided by a Jury." (Gattison Ltr. Br. 4.) But Gattison's own deposition testimony indicates that he views reporting unethical or illegal conduct of his fellow officers as a duty of his employment. (Gattison Dep. 175:16-175:24.) Therefore there is no issue of material fact as to whether his reporting of unethical and illegal conduct was part of his job duties. As such, the decisions in <u>Skrutski v. Marut</u>, No. 03-2280, 2006 U.S. Dist. LEXIS 66024 (M.D. Pa. Sept. 15, 2006); and <u>Batt v. City of Oakland</u>, No. C 02-04975, 2006 U.S. Dist. LEXIS 47889(N.D. Cal. July 13, 2006), do not offer a basis to preserve his claim against the restrictions of <u>Garcetti</u>.

Gattison seeks to distinguish <u>Garcetti</u> in the context of a police corruption case, arguing that

---

(Gattison Dep. 175:16-175:24.)

dismissing his federal claims would "further solidify the 'blue wall of silence' and vindicate the [Irvington Police Department's] attempt to falsify these documents, suborn perjury, and unjustly and unlawfully secure criminal convictions." (Gattison Opp. Br. 23.) He finds support for this proposition in Taylor v. Town of Freetown, 479 F. Supp. 2d 227 (D. Ma. 2007). In that case, the officer claimed he was retaliated against for refusing to cover up false records allegedly made as part of a police detail at a local cable company. Id. at 229-30. The officer alleges the Police Chief falsely accused him of falsifying records in order to cover up the actual wrongdoing. Id. In a June 23, 2003 letter to the police appointing authority, he states that the Chief's accusation that he falsified records "was the direct and immediate result of [his] initially complaining internally about the unlawful conduct of other officers in [his] department." Id. at 232 (internal quotations omitted). He brought suit based in part on a First Amendment claim. Id. at 235-36. The court found that while his letter focused on his alleged retaliatory treatment, "the retaliation directly resulted from an issue clearly touching upon a matter of public concern: police corruption." Id. at 237. It then went on to distinguish Garcetti by stating that "Garcetti is not meant to strip an employee of First Amendment protection when speaking out regarding issues of serious and widespread public concern, like corruption, just because a garden-variety rule requires him to tell a supervisor." Id. at 237. The court ultimately found that the officer failed to produce sufficient evidence of retaliation and dismissed his First Amendment claim on the merits.

Gattison also cites to another case, Vose v. Kliment, No. 06-3022, 2007 U.S. Dist. LEXIS 16633 (C.D. Ill. Mar. 8, 2007), which found that where Vose reported suspected corruption in another unit, he was not doing so pursuant to his official duties but rather as a citizen reporting police corruption. (See Gattison Ltr. Br. 3-4.) That decision was reversed by the 7th Circuit. Vose v. Kliment, No. 07-1792, 2007 U.S. App. LEXIS 25136 (7th Cir. Oct. 26, 2007). The circuit court found that Vose's interest in reporting the alleged corruption was based in part on his concerns for how it could affect his unit and that concerned his official duties as a supervisor. Id. at *14-15. Thus, only

8

Taylor, which is not binding authority, supports the proposition that when police officers report corruption, they are acting as citizens and not pursuant to official duties.

The Taylor court's interpretation of Garcetti appears inconsistent with the language of the case itself. In Garcetti, the Supreme Court understood the implications of its decision on reporting government misconduct.

> Exposing governmental inefficiency and misconduct is a matter of considerable significance. . . . [P]ublic employers should, "as a matter of good judgment," be "receptive to constructive criticism offered by their employees." The dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws and labor codes—available to those who seek to expose wrongdoing. These imperatives, as well as obligations arising from any other applicable constitutional provisions and mandates of the criminal and civil laws, protect employees and provide checks on supervisors who would order unlawful or otherwise inappropriate actions.
>
> We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties. Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job.

Garcetti, 126 S. Ct. at 1962 (citations omitted).

This portion of the Garcetti opinion is instructive. It points out that the public employee is empowered to speak out, even on sensitive issues such as the matters raised by Gattison. Other protections beyond the First Amendment exist to protect against employer bad faith. A careful reading of Garcetti makes it difficult to discern why Gattison would have the right to a federal cause of action, with all the tools of discovery and significant costs of litigation, to re-examine his supervisors' response to his internal communications based on the theory that the First Amendment shielded him from discipline. The "checks on supervisors" that control unlawful or inappropriate actions exist in the state laws that Gattison utilizes in the complaint, and even before he sued, in the hearing that he was afforded on the disciplinary action he characterizes as retaliatory. It is how Gattison chose to communicate—which the record reveals has always been within the context of his employment—that requires dismissal of his First Amendment claims,

9

something that does not limit his rights under New Jersey statutes or common law. To find otherwise would interject judicial constitutional review into the workplace in a manner forbidden by Garcetti.

In his opposing papers, Gattison alleges that he gave testimony against Chase in a sexual harassment and assault case, and offers this as a basis for the Court to find he was subject to unlawful retaliation. (Gattison Opp. Br. 11, 19.) But he provides no factual support for this assertion, beyond this statement in his Affidavit:

> In addition to the foregoing, I had contemporaneously testified against Chief Case in connection with sexual harassment and criminal charges that had been made against him by other members of the Irvington Police Department.

(Gattison Aff. 25.) A broad allegation devoid of details like this is not enough, particularly where the Third Circuit has held that "[a]n affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden." Maldonado v. Ramirez, 757 F.2d 48, 51 (3d Cir. 1985)(internal quotations omitted). Gattison does not disclose where and when he testified or in what forum, or the nature of his testimony, who had brought the claims against Chase, and what the claims were. And because the statement is so vague and lacking in context, Gattison fails to establish that his testimony and Chase's subsequent alleged response had any factual connection to the First Amendment claim.

### B. Due Process and Equal Protection Claims

Gattison alleges defendants deprived him of due process of law, claiming they "intentionally used internal procedures in a corrupt manner to deny Gattison redress within the department," and "used influence, pressure, connections, and lies as a means to deny Gattison redress through outside agencies." (Compl. ¶ 39.) Essentially, he argues that Noel, Chase, and Koontz filed flawed disciplinary charges against him in retaliation for his speech, and that this constituted a denial of his procedural due process rights. (See Gattison Opp. Br. 24-27.) Gattison also claims that the allegedly faulty disciplinary charges denied him equal protection under the Fourteenth

10

Amendment. Gattison accuses the defendants of "singling him out, treating him as separate, apart, and unequal to others in the Police Department . . . by harassing and discriminating against him using the Police Department's disciplinary procedures." (Compl. ¶ 44.)

Defendants contend that these arguments are subsumed into the retaliation claim and the Court agrees. Gattison contends the disciplinary proceedings arose out of retaliatory animus related to the speech, and as such, factually, the hearing is another consequence of the speech. But this is the very speech that this Court has found may not be given First Amendment protection. In fact, the proceedings are precisely the kind of employer response that Garcetti expects to be outside of federal review. And although Gattison complains that he was denied traditional due process protections, the record completely belies this: he had a lawyer, he presented evidence, he took advantage of state judicial review. He also offers no support in the record to show that, because of defendants' alleged retaliation, he was treated differently than any other police officer disciplined by the Irvington Police Department. As such he fails to support his equal protection claim.

In opposing Gattison's federal claims, the individual defendants have asserted qualified immunity as a defense to their actions. Since the Court has concluded that Gattison has not raised a constitutional violation in his Section 1983 claims, it need not address this specific defense. Saucier v. Katz, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."). Institutional defendants, the Township of Irvington and the Irvington Police Department, have not moved for dismissal of the federal claims. But Gattison was on notice from the briefs submitted by the other movants that the viability of the federal claims was at issue and the Court may dismiss Counts 1, 2 and 3 against all defendants. See Celotex, 477 U.S. at 326 ("district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

### V.  CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of movants Koontz (docket entry # 50), Noel (docket entry # 52), Chase (docket entry # 53), and Damiano (docket entry # 55) as to as to Counts 1, 2 and 3 of the Complaint.  The Court also grants, <u>sua sponte</u>, summary judgment on these counts as to the Township of Irvington and Irvington Police Department for the reasons discussed above.

The Court will not retain jurisdiction over Gattison's NJ LAD, CEPA, civil conspiracy, or negligent hiring and supervision claims given its dismissal of the federal constitutional claims.  A district court "may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  Courts are within their sound discretion to dismiss state law claims when the federal law claims have properly been dismissed.  <u>See</u> <u>Bacon v. Carroll</u>, 232 Fed. Appx. 158, 160 (3d Cir. 2007); <u>Queen City Pizza v. Domino's Pizza</u>, 124 F.3d 430, 444 (3d Cir. 1997).

Dated: 12/31/07                                            /s/Katharine S. Hayden
                                                           Katharine S. Hayden
                                                           United States District Judge